## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANTHONY DORAME,

                **Plaintiff,**

vs.

                               **Civ. No. 04-0102 LCS**

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL SECURITY,

                **Defendant.**

### MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 11) filed June 10, 2004.  Plaintiff filed a Memorandum in support of his motion (Doc. 12); Defendant filed a Response on July 26, 2004 (Doc. 13), and Plaintiff filed his Reply on August 10, 2004 (Doc. 14).  The parties have consented to a United States Magistrate Judge conducting all proceedings in this matter, pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being fully advised, finds the Plaintiff's motion should be **DENIED**.

### Standard of Review

      The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion."  *Andrade v. Sec'y of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (*quoting Broadbent v. Harris*, 698 F.2d 407, 414 (10th

Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991) (*quoting Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) (citation omitted)).

In order to qualify for disability benefits and supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(a)). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform the work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920 (2004). *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

### **Procedural History**

Plaintiff, now 61, filed an application for Disability Benefits and Supplemental Security Income ("SSI") on November 24, 1995 alleging disability commencing on March 15, 1995. R. 22-26. Plaintiff has a high school education and past relevant work as a mail carrier for the United States Post Office. R. 58. Plaintiff's alleged disability was due to depression, liver disease, lower back pain,

glaucoma, and a heart condition. R. 52-53. On September 17, 1998, ALJ Silva found that: Plaintiff

was disabled as of April 19, 1998 but not before; Plaintiff had the residual functional capacity

("RFC") for light work prior to that date, and Plaintiff was entitled only to Medicare benefits. R.

299-300. Plaintiff was disqualified from SSI benefits due to his receipt of disability benefits from the

Veterans' Administration. R. 316. Plaintiff appealed the decision to the Appeals Council which

declined further review on February 21, 2001. R. 5-6. Hence the decision of the ALJ became the

final decision of the Commissioner for purposes of judicial review. On March 23, 2001, Plaintiff filed

an action in this court, seeking judicial review of the Commissioner's final decision pursuant to 42

U.S.C. § 405(g).[1] Plaintiff contended that the ALJ erred in determining the onset of his disability and

sought SSI beginning November 2, 1995. R. 316. On March 18, 2002, the court remanded the case

to the Commissioner in order to consider Plaintiff's mental impairment for a closed period of

disability, from November 2, 1995 to April 19, 1998. R. 324, Docs. 14-15, 01cv0238 MV/RLP,

*Dorame v. Barnhart.*

Upon remand, ALJ Wurm held a hearing on December 4, 2002 at which Plaintiff was present

and testified. R. 353. Daniel Moriarty, a vocational expert, also testified at the hearing. *Id.* Plaintiff

was represented by Gary Martone, Esq.

Plaintiff testified before the ALJ that he went to Alamogordo Mental Health Services in 1995

because he had been diagnosed with glaucoma which prevented him from working as a mail carrier

and also prevented him from creating oil paintings, which was a both a hobby as well as a source of

income. R. 361-362. Plaintiff indicated that he was also depressed at the time due to a difficult

divorce. R. 368. Plaintiff stated that during the period of time at issue, the depression kept him from

---

[1] *See* 01cv0328 MV/RLP, *Dorame v. Barnhart.*

sleeping, that he did not eat well and lost about twenty pounds, and that he could not concentrate. R. 362, 365, 366-367.  His concentration did not extend through a half hour of television watching because his mind would wander.  *Id.*  He stated that his daughter would help him with laundry and cooking because his depression would interfere with his ability to do these tasks.  R. 364.  Plaintiff had very little motivation and self-esteem.  R. 365.  Plaintiff also stated that he had problems going out in public because he would feel anxious and begin to panic.  R. 362-363.  Plaintiff testified that he went to the VA clinic in El Paso and saw Dr. Ortez who prescribed Paxil.  R. 363.  At the time of the hearing in December 2002, Plaintiff testified that he had been taking Paxil for four or five years and that it had helped him to be more independent, better able to concentrate, and more comfortable in public. R. 363-365.  Plaintiff indicated that during the period at issue he had been taking Prozac but that one of its side effects was that he felt angry much of the time.  R. 366.

In the course of the hearing, the ALJ also questioned Daniel Moriarty, a vocational expert. R. 369-371.  Mr. Moriarty testified that Plaintiff would not be able to return to his past relevant work as a mail carrier.  R. 370-371.  The ALJ then asked Mr. Moriarty to evaluate a hypothetical individual with a light exertional capacity, an occasional ability for postural movements, reaching, and overhead exertion, a moderate pace, and a moderately limited ability to concentrate and interact with both the general public as well as supervisors and coworkers.  R. 370.  Mr. Moriarty indicated that he understood moderate to mean one-third of the time in an eight-hour day, or roughly two hours of the work day.  R. 372, 375.  Given the limitations posed by ALJ Wurm,  Mr. Moriarty identified three jobs, all unskilled, that a hypothetical individual with these limitations could perform, that of an office helper, a hostess, or a vending machine attendant.  R. 371.  Mr. Moriarty explained that if the hypothetical individual had an inability to concentrate or to interact with people for roughly half of

a work day, or four hours, then the hypothetical individual's work flow would decrease dramatically, the individual would have difficulty retaining his employment and the hypothetical individual would not be able to perform the jobs of office helper, hostess, or vending machine attendant.  R. 373-374.

The ALJ issued his decision on March 17, 2003, analyzing Plaintiff's claim according to the analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  R. 288-292.  At the first step of the sequential evaluation, the ALJ had found that Plaintiff had not engaged in substantial gainful activity since the filing of his application.  R. 289.  At the second step, the ALJ determined that Plaintiff had severe impairments consisting of degenerative joint disease of the shoulders, chronic depression, and degenerative disc disease with low back pain. *Id.*  At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments or combination of impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. *Id.* The ALJ also found that Plaintiff was not credible with regard to statements concerning his symptoms and his functional restrictions. *Id.*  At step four, the ALJ found that from November 2, 1995 through June 30, 1998, Plaintiff retained a residual functional capacity for light work activities which required only occasional postural changes with regard to bending, stooping, climbing and kneeling, only occasional overhead reaching, and which accommodated moderate (up to one-third of the time) restrictions in attention, concentration, and interaction with the general public or with supervisors. R. 290.  The ALJ further found that Plaintiff was not able to perform his past relevant work.  R. 291. At the final step, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform and he based this finding upon the testimony of Mr. Moriarty at the administrative hearing.  R. 23.  Since there were jobs that existed in significant numbers in the

national economy that Plaintiff could perform, the ALJ found that Plaintiff was not disabled at step five of the sequential analysis. R. 291-292.

Plaintiff filed a Request for Review of Hearing Decision and the Appeals Council denied Plaintiff's request for review. R. 274-275. Therefore the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On January 29, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**Administrative Record**

Alamogordo Mental Health Services indicated that Plaintiff had attended therapy sessions in its office between the dates of March 5, 1994 and July 7, 1994, during which time he met with a social worker for a total of eight one-hour sessions and a psychiatrist for four sessions. R. 126. In a disability report dated March 15, 1995, Plaintiff stated that he was unable to concentrate due to periods of depression. R. 52. He also indicated that he cooked twice a day, cleaned about two to three times a week, went shopping once per month, went walking two to three times per week, and visited his sister once every two weeks. R. 57, 63. In a Disability Determination Services ("DDS") Report dated on January 31, 1996, Plaintiff alleged depression but stated that he had not had any treatment for two or three years prior to January 1996 and indicated that he had taken the anti-depressant medication, Prozac, for six months in 1994. R. 130. He stated that although the medication helped him, he could not afford treatment and discontinued use. *Id.* On March 13, 1997, Plaintiff again indicated that he had been prescribed Prozac in 1994 and that it had worked well but that he could not afford the medication and that he did not have the resources to get help. R. 73. He also stated that he had difficulty sleeping, worried a lot, and had suicidal thoughts at times. *Id.* In a medical report March 4, 1997, Plaintiff was noted as having reactive depression. *Id.*

An RFC assessment conducted on January 31, 1996, indicated that Plaintiff could occasionally lift or carry up to twenty pounds and frequently lift up to ten pounds, and that he could stand/walk and sit for up to six hours in an eight-hour work day.  R. 133.  He had unlimited ability to push and pull.  *Id.*  Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl.  R. 134.  No communicative limitations were established.  R. 136.

In a psychiatric evaluation conducted on February 27, 1998*,* M. A. Hickey, M.D., found Plaintiff to be pleasant and cooperative.  R. 184.  Plaintiff indicated that his inability to work and perform at his usual level due to various problems such as a herniated disc, glaucoma, and arrhythmia had led to depression.  *Id.*  He stated that he had taken Prozac but that he could not afford it and in addition, he thought the medication made him more irritable.  *Id.*  He indicated an inability to concentrate, no appetite, and few social contacts outside of his young grandchild.  R. 184-185.  Plaintiff indicated that he felt isolated and thought about suicide.  *Id.*  Dr. Hickey indicated that along with being pleasant and cooperative, Plaintiff was alert and oriented.  R. 185.  Plaintiff was noted as being an extremely sad and tired individual and concentration protocol tests revealed that his concentration abilities were deficient.  *Id.*  Plaintiff was diagnosed as having chronic, major depression and was referred to the VA for assistance with his depression.  *Id.*

On March 17, 1998, Dr. Thomas prescribed Plaintiff Prozac which indicated that Plaintiff should seek further treatment and medication from the VA.  R. 219.  On May 28, 1998, a representative from the VA Medical Center in El Paso also indicated that Plaintiff had been prescribed Prozac and Plaintiff indicated that he was sleeping better.  R. 226.

ALJ  Silva held a hearing on May 14, 1998 at which Plaintiff was present and testified.  R. 240.  Plaintiff was represented by David Washburn.  *Id.*  Plaintiff indicated that when he first took

Prozac in 1994 he felt less withdrawn but stopped taking it because he could not afford to go to a psychiatrist and the prescription was too expensive.  R. 252-253.  Plaintiff's testified that he had lost a lot of weight and that he had trouble sleeping and concentrating due to his depression.  R. 245, 254. He stated that he did not like to go out in public because he would get panicky and his he could only stay in a store for about fifteen minutes before he would have to leave.  R. 269.  He stopped doing oil paintings because he was not able to concentrate.  R. 268.  Plaintiff also testified that he thought Prozac made him edgy, irritable, and aggressive and that was the reason he had stopped taking it earlier; he also stated that he was concerned that he would start having the side effects again since he had started taking Prozac again in spring 1998.  R. 271.

**<u>Analysis</u>**

In his Motion to Reverse or Remand Agency Decision (Doc. 11), filed June 10, 2004, Plaintiff alleges that the ALJ's decision was erroneous for several reasons.  First, Plaintiff alleges that Plaintiff's concentration was impaired such that it affected his functioning most of the time and that ALJ Wurm erred in posing a hypothetical to the Vocational Expert ("VE"), Mr. Moriarty, in which an individual would have difficulty concentrating for only one-third of the time, or roughly two hours, during the work day.  Second, Plaintiff alleges that it was error for the ALJ to find that Plaintiff could perform routine, simple, low stress work because routine, unskilled work can induce stress.  Further, Plaintiff alleges that if a job is considered routine and simple, it should be described in the Dictionary of Occupational Titles ("DOT") as having a General Educational Development ("GED") rating of 1 and none of the jobs the VE suggested as being available to the  hypothetical individual, that of office helper, vending machine attendant, or hostess had such a rating.  Finally, Plaintiff alleges that it was error for ALJ Wurm to fault Plaintiff for not seeking a low cost source for his medication. In short,

Plaintiff asserts that the ALJ erred at step five when he found that there were jobs that existed in substantial numbers in the national economy that Plaintiff could perform.  The ALJ's decision must be supported by substantial evidence.  *Washington*, 37 F.3d at 1438.  Substantial evidence requires more than a scintilla, but less than a preponderance and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion.  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

### HYPOTHETICAL POSED TO VOCATIONAL EXPERT

### A.     Mental Impairment

Plaintiff alleges that there is not substantial evidence to support the ALJ's finding that Plaintiff's mental impairment affected his ability to function only one-third of the time during an eight hour work day.  Thus, Plaintiff contends that ALJ Wurm erred when he posed a hypothetical to the VE in which a hypothetical individual's ability to concentrate was affected for one-third of a work day.  *See* R. 370, 372, 375.  Plaintiff alleges that his mental impairment affected his ability to concentrate for half of a work day.

In his opinion, the ALJ noted that during a psychiatric consultative examination on February 27, 1998 Plaintiff was found to be alert, fully oriented, pleasant and cooperative.  R. 291.  The ALJ also noted that Plaintiff was sad and tired during the exam and tests revealed that Plaintiff's concentration was impaired and that he demonstrated psychomotor slowing.  *Id.*  Plaintiff was diagnosed with major depression.  *Id.*  Throughout the record Plaintiff indicated that he had difficulty concentrating; for example, he testified before ALJ Wurm that his mind would wander while watching a thirty minute television program and that his daughter would help him with laundry and cooking because his depression would interfere with his ability to complete these tasks.  *See* R. 52, 362, 364.

However, in a disability report dated March 15, 1995, several months before the alleged onset date of Plaintiff's disability, Plaintiff also indicated an ability to cook twice daily, clean two or three times a week, go shopping once per month, go for a walk two or three times per week and visit his sister once every two weeks.  R. 57, 63.  Plaintiff indicated that he had difficulty concentrating and on February 27, 1998, Dr. Hickey indicated that concentration protocol tests revealed that Plaintiff's concentration abilities were deficient.  R. 185.  However, there is nothing in the record that indicates Plaintiff's mental impairment affected his ability to function for four hours during an eight hour work day.  Objective medical evidence merely indicated that Plaintiff's ability to concentrate was affected, but did not indicate to what extent this ability was affected, and ALJ Wurm accordingly took Plaintiff's impairment into consideration when he posed a hypothetical to the VE in which the hypothetical individual had a moderately limited ability to concentrate and interact with both the general public as well as supervisors and coworkers.  R. 370.  The VE indicated that if a hypothetical individual had an inability to concentrate or interact with people for roughly half of a work day, then there would be no jobs in the national economy that Plaintiff could perform.  R. 373-374.  However, it is well established that hypothetical questions posed to a VE must reflect  with precision all of a claimant's impairments, but these questions need only reflect impairments borne out by the evidentiary record.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).  That is, a VE's testimony is not binding on an ALJ if it incorporates limitations that the ALJ finds do not apply the to the claimant.  *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1999).  The ALJ adequately explained his refusal to credit Plaintiff's complaints regarding the severity of his mental impairment.  *See* R. 289, 291; *Shepherd v. Apfel*, 184 F.3d 1196 (10th Cir. 1999).  As such, the ALJ's hypothetical was supported by substantial evidence and he was correct not to incorporate the VE's assessment of a

hypothetical individual whose mental impairment affected his ability to concentrate for half of a work day into his decision since such limitation was not supported by the record.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Plaintiff's argument on this point must be rejected.

### B.      Low Stress Work

Plaintiff's next argument is that the ALJ found and stated to the VE that Plaintiff could perform routine, simple, low stress work but that the ALJ erred because his hypothetical to the VE did not take into account that unskilled and repetitive work can induce stress.  Further, Plaintiff argues that if a job is considered routine and simple, it should be listed in the DOT as having a GED rating of one; however, all of the jobs that the VE indicated that a hypothetical individual with Plaintiff's impairments could perform had a GED rating above one.

Plaintiff's arguments are wholly without merit.  First, the ALJ specifically asked the VE whether the jobs of office helper and vending machine attendant would be characterized as high-stress jobs.  R. 376.  The VE responded that the jobs are characterized as unskilled and routine and he did not characterize them as being high-stress.  *Id.*  Second, Plaintiff points to no authority to support the conclusion that a routine and simple job should have a GED rating of one.  Defendant is correct to point out that all three jobs listed by the VE, that of office helper, hostess, and vending machine attendant can be learned within thirty days.  Pl's. Mem. Supp. Mot. Ex. A-C, Doc. 12.  As such, work which can be learned within thirty days is unskilled and simple.  20 C.F.R. § 404.1568(a).  Plaintiff offers no authority, nor did he elicit any testimony from the VE which would suggest that in order for a job to be low stress it would have to be at the lowest level of simple and routine.  The hypothetical posed to the VE, contrary to Plaintiff's assertion, took stress into account and was supported by substantial evidence.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

**CREDIBILITY: PLAINTIFF'S FAILURE TO SEEK MEDICATION**

In his opinion, the ALJ noted that Plaintiff had testified that from 1995 to 1998 he had severe problems with depression but that he was noncompliant with his medications and discontinued using them. R. 130, 184, 252-253, 271, 289. Plaintiff also reported that he could not afford the medication prescribed to him, Prozac, and further, it had the side effect of making him feel edgy and irritable. *Id.* Using this information, ALJ Wurm stated, ". . . [t]here is no evidence that the claimant sought either free or low cost medications, which were provided by the Veterans program he attended, or that he was ever denied such medications. Moreover, the claimant did not complain to his doctors about undesirable side effects nor did he request a change of medications. He simply discontinued them. Such behavior is inconsistent with his complaints of severe disabling depression during the period under review." R. 289.

From his finding, ALJ Wurm was not denying Plaintiff benefits due to his failure to take Prozac, his prescribed treatment. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ used Plaintiff's failure to take Prozac in order to evaluate Plaintiff's credibility and his allegation that his mental impairment was disabling. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991). Plaintiff argues that an ALJ must acknowledge that indigence is a justification for a claimant's failure to seek treatment. *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). However, ALJ Wurm specifically found that despite Plaintiff's indigence, free or low cost medications may have been available to Plaintiff through the Veterans' Administration and Plaintiff does not dispute this finding; Plaintiff argues only that he should not be penalized for not seeking treatment. R. 289; *See Qualls*, 206 F.3d at 1372. The ALJ uses Plaintiff's failure to seek treatment as anecdotal evidence to show that Plaintiff was not credible. The ALJ reasoned that if Plaintiff was experiencing the severe mental

impairment he alleged he was or if he was experiencing negative side effects from Prozac, he would have tried to communicate this concern with his doctors or would have sought other help regardless of his ability to pay.  R. 99-121, 156-170, 193-200, 289.  Further, he had received much of his previous medical treatment through the Veterans Administration and must have been aware of the availability of free or low cost care.  *Id.*  Credibility determinations are particularly the province of the finder of fact and the Tenth Circuit has declined to upset such determinations when supported by substantial evidence.  *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).  ALJ Wurm's finding that Plaintiff lacked credibility with regard to his mental impairments is supported by substantial evidence.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).


### Conclusion

Upon review of the evidence presented in this Motion to Reverse and Remand for Payment of Benefits or in the Alternative, for Rehearing, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ appropriately interpreted the statutes and regulations involved in this matter.  According Plaintiff's Motion (Doc. 11) is not well-taken and is **DENIED**.

A Judgment consistent with this opinion shall issue.

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**